# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GROVER LEE PETTES and GLORIA
PETTES,

       Plaintiffs,

   vs.                                                                          No. CIV 00-1803 LH/LCS

CITY OF LAS CRUCES, LAWRENCE
ARCHULETA, and TOM MASSAD,
individuals and as employees of the City of
Las Cruces, DONA ANA COUNTY and/or
the public officials and employees responsible
for operating the Dona Ana County Detention
Center,

       Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on City Defendants' (City of Las Cruces, Lawrence

Archuleta and Tom Massad) Motion to Dismiss Certain Claims by Grover Lee Pettes and All Claims

by Gloria Pettes (Docket No.17), filed February 26, 2001. The Court, having considered the

pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds

that the Motion shall be **granted in part** and **denied in part.**

The Complaint

The facts of this case, as alleged in the Complaint, are as follows.  Plaintiff Grover Lee Pettes[1] is a black male with cerebral palsy.  (Compl. ¶1).  On January 28, 2000, Defendant Archuleta, a police officer for Defendant City of Las Cruces ("City"), performed a traffic stop on a motor vehicle operated by Plaintiff.  (Compl. ¶¶4, 7, 8).  At the time of the stop, Plaintiff was operating his vehicle according the City traffic laws.  (Compl. ¶9).  The traffic stop was made only because Plaintiff is black and happened to be operating his motor vehicle near a house which was under police surveillance.  (Compl. ¶10).  Defendant Massad, also a police officer for Defendant City, arrived on the scene shortly after the traffic stop.  (Compl. ¶11).  After making the traffic stop, one of the Defendant Officers determined there was an outstanding bench warrant issued for Plaintiff's arrest.  (Compl. ¶12).  The bench warrant had been issued for Plaintiff's alleged failure to appear before a Municipal Court Judge to answer a citation issued for parking inoperable vehicles on Plaintiff's own property.  (Compl. ¶12).  Plaintiff was then forced over the trunk of the police car where his hands were very tightly handcuffed behind his back before being transported to the Dona Ana County Detention Center.  (Compl. ¶ 13).  During transportation to and his incarceration in the detention center, Plaintiff complained about the manner of his restraint and the pain in his left wrist.  (Compl. ¶¶13, 16).  The police officers and the detention center employees failed and/or refused to come to Plaintiff's aid.  (Compl. ¶45).  Plaintiff's left wrist was broken as a result of the excessive use of force by the police.  (Compl. ¶18).

---

[1]Plaintiff Grover Lee Pettes will be referred to as "Plaintiff."  The other plaintiff in this case is his wife, Gloria Pettes, who will be referred to as "Plaintiff Gloria Pettes."

Count I - Violation of the Civil Rights Act by City of Las Cruces

In Count I, Plaintiffs allege that Defendant City failed to supervise and adequately train police officers in procedures and methods for dealing with handicapped persons, has a policy of racial profiling, and is liable for the actions of its employees under the doctrine of *respondeat superior.*

To establish municipal liability under 42 U.S.C. 1983, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged. *Jenkins v. Wood*, 91 F.3d 988, 993 (10th Cir. 1996). If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from "deliberate indifference to the rights" of the plaintiff. *Id.* at 994. Moreover, if the inaction theory rests on an alleged failure to train, the plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the  policymakers of the city can reasonably be said to have been deliberately indifferent to the need for additional training. *Id.* Furthermore, where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. Id. A municipality cannot be liable under 42 U.S.C. §1983 based on a theory of *respondeat superior. See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996), *citing Monell v. Dept. of Social Servs.* 436 U.S. 658 (1978)(a municipality may not be held liable unless actions pursuant to official municipal policy of some nature caused a constitutional tort).

This case arises out of a single incident in which two on-duty police officers for the City arrested Plaintiff and transported him to the Dona Ana County Detention Center where he was

detained for several hours.  Plaintiffs make only conclusory allegations that the City failed to supervise and train the police officers and that the City has a policy of racial profiling.  Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Nowhere in the Complaint do Plaintiffs provide factual averments to support allegations that a City policy of racial profiling exists, that the City was deliberately indifferent to Plaintiff's rights, or that the need for training was obvious and the inadequate training was so likely to result in constitutional violations, that the City's policymakers can reasonably be said to be deliberately indifferent.  Nor are there any factual allegations that the arrest and detention were made pursuant to a decision made by a person with authority to make policy decisions on behalf of the City.  While not every fact must be described in detail, Plaintiffs are not relieved of the burden of alleging sufficient facts on which a recognized legal claim could be based.  *See Id.*

A plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. *See Id.*  In this case, two motions to dismiss under Fed. R. Civ. P. 12(b)(6) have been filed giving Plaintiffs notice and opportunity to seek leave to amend their complaint.  (*See* Docket Nos. 17 and 23, filed February 26 and March 8, 2001).  In fact, Defendant City, in both its Memorandum and Reply briefs, explicitly states that the Complaint must be amended, and even describes the nature of the allegations required, in order for the Complaint to survive its Motion to Dismiss.  To date, Plaintiffs have not sought leave to amend their Complaint.  Because Plaintiffs stand on their original Complaint, it appears beyond doubt that they can prove no set of facts supporting Count I of the

Complaint that would entitle them to relief.  Therefore, the claim in Count I against the City shall be dismissed with prejudice.

<u>Count II - Violation of the Civil Rights Act by Lawrence Archuleta and Tom Massad</u>

In Count II, Plaintiffs allege that Defendants Archuleta and Massad, on duty police officers employed by the City of Las Cruces, violated Plaintiff's civil rights by engaging in racial profiling, unlawfully seizing his car, unlawfully searching him, falsely arresting and imprisoning him, and using excessive force.[2]  To the extent that it is directed against Defendants Archuleta and Massad in their official capacities, Count II is dismissed for failure to plead sufficient facts showing the existence of a municipal custom or policy, as discussed above for Count I.  *See Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, n.2 (10th Cir. 1998)(a §1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same).

Defendants have raised the defense of qualified immunity.  (Answer ¶11).  When a claim of qualified immunity is raised, the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the statutory or constitutional right the defendant allegedly violated was clearly established at the time of the conduct at issue.  *See Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000).  In the context of a motion to dismiss, the Court's review of the qualified immunity defense is limited to the pleadings.  *Neiberger v. Hawkins,* 246 F.3d 682 (10th Cir. 2001)(unpublished opinion), citing *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994).  In assessing the pleadings, the Court construes the allegations in the complaint, and any reasonable

---

[2]Plaintiffs also allege in Count II that the City is liable for the wrongful acts of its employees under the theory of *respondeat superior.*  However, a municipality may not be held liable under 42 U.S.C. §1983 based on a theory of *respondeat superior.  See Wilson v. Meeks,* 98 F.3d 1247, 1255 (10th Cir. 1996), *citing Monell v. Dept. of Social Servs.* 436 U.S. 658 (1978)(a municipality may not be held liable unless actions pursuant to official municipal policy of some nature caused a constitutional tort).

inferences to be drawn therefrom, in favor of the petitioner.  *Id.*, citing *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court no longer applies a heightened pleading standard to a plaintiff's complaint where the defendant has asserted a qualified immunity defense.  *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001).  The first inquiry the Court must undertake is whether the facts alleged show the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  The next step is to ask whether the right was clearly established.  *Id.*

Plaintiffs claim that Defendants Archuleta and Massad violated Plaintiff's civil rights by engaging in racial profiling in that there was no probable cause to make the traffic stop and that the traffic stop was made because of Plaintiff's race.   (Compl.¶¶9-10).  Plaintiffs also allege that the Defendant Officers violated Plaintiff's civil rights by subjecting him to an unlawful search, unlawfully seizing his motor vehicle, and falsely arresting and imprisoning him.  (Compl.¶30).  Count I appears in part to be a claim that Defendants' actions were motivated by racial animus and denied Plaintiff the full and equal benefit of laws for the security of persons and property as is enjoyed by white citizens, in violation of 42 U.S.C. §1981, although the statute is not cited in the Complaint.  For claims of this type, the governmental actor's intent, motive, or purpose is the critical element.  *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 647 (10th Cir. 1988).  Plaintiffs cannot rely on conclusory allegations for their racial animus claims; they must produce some specific factual support for their claim of unconstitutional motive.  *Id.* at 649.  The Complaint alleges no specific factual support that the Defendant Officers' actions were improperly motivated.  To the extent that Count I is alleging a violation of equal rights under the law, 42 U.S.C. §1981, the Defendant Officers are entitled to qualified immunity.

-6-

The Complaint also alleges that Defendant Officers violated the Civil Rights Act, 42 U.S.C. 1983, on the ground that there was no probable cause to make the traffic stop. (Compl. ¶9). An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause. *Oliver,* 209 F.3d at 1186. However, in order to stop and briefly detain a person for investigative purposes, an officer must have reasonable suspicion of criminal activity. *Id.* According to the Complaint, Plaintiff was operating his motor vehicle in a safe manner and according to the vehicle and traffic laws of the City. Nothing in the Complaint suggests that Defendant Officers had reasonable suspicion to stop Plaintiff. Plaintiffs' allegations, if true, state a claim for a violation of a clearly established constitutional right. Accordingly, Defendant Officers are not entitled to qualified immunity at this time. *See Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir. 1991)(defendants may raise qualified immunity defense in answer, motion to dismiss, motion for summary judgment, at trial and after trial).

With respect to the allegations that Defendant Officers violated Plaintiff's civil rights by subjecting him to an unlawful search, unlawfully seizing his motor vehicle, and falsely arresting and imprisoning him, the Court finds that the Defendant Officers are entitled to qualified immunity. The allegations before the Court indicate that the Defendant Officers' actions subsequent to traffic stop, specifically the search and seizure, arrest and imprisonment, but not the excessive force claim, were objectively reasonable. One of Defendant Officers determined after making the traffic stop that there was an outstanding warrant for Plaintiff's arrest. (Compl. ¶12).

Plaintiff also claims that the Defendant Officers used excessive force in making his arrest and in the way and in the length of time that he was restrained. (Compl. ¶30). Claims of excessive force

-7-

in the context of arrests or investigatory stops are analyzed under the Fourth Amendment's objective reasonableness standard. *Saucier,* 121 S.Ct. at 2158. The test of "reasonableness" requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The qualified immunity inquiry is also concerned with acknowledging that reasonable mistakes can be made as to the legal constraints on particular police conduct. *Id.* If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense. *Id.* According the Complaint, Plaintiff was arrested on a warrant  issued for failure to appear in municipal court to answer a citation for parking inoperable vehicles on his property. Nothing in the Complaint indicates Plaintiff posed a threat to the safety of Defendant Officers or others, or resisted arrest. Construing the allegations in the Complaint, and any reasonable inferences to be drawn therefrom, in favor of Plaintiff, the Court does not find that Defendant Officers reasonably, but mistakenly, believed that Plaintiff posed a threat or would attempt to evade arrest which justify their use of more force than in fact was needed. Under Plaintiff's version of the facts, a reasonable police officer would not have believed that the force used, sufficient to break a wrist, was necessary under the circumstances. I conclude that Defendant Officers are not, at this time, entitled to qualified immunity on the excessive force claim. *See  Quezada,* 944 F.2d at 718 (defendants may raise qualified immunity later in motion for summary judgment, at trial and after trial).

Counts III and IV - Intentional Tort and Negligence

Under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to 41-4-29, a person claiming damages against a city must give written notice to the mayor within 90 days after the

occurrence giving rise to the claim, unless city had actual notice of the occurrence.  N.M. Stat. Ann. § 41-4-16.  Plaintiffs do not allege that they gave the City written notice within 90 days of Plaintiff's arrest and detention.  Plaintiffs' contention that Grover Pettes had 180 days to give written notice because of his disability[3] is without merit.  "The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice *by reason of injury*."  N.M. Stat. Ann. § 41-4-16(b)(emphasis added); *See also Bolden v. Corrales*, 111 N.M. 721, 722, 809 P.2d 635, 636 (N.M. Ct. App. 1990)(the fact that the full extent of the injury was not known does not affect the running of the statute of limitations for the New Mexico Tort Claims Act).

Plaintiffs also claim that no written notice is required because the City had actual notice. Actual notice is a threshold issue to be heard by the trial court to determine whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation.  *Lopez v. New Mexico*, 122 N.M. 611, 616, 930 P.2d 146, 151 (N.M. 1996).  There has been no evidentiary hearing on the issue of actual notice.  Accordingly, that part of the City's Motion dealing with the negligence claim against the City and Defendant Officers in Counts III and IV of the Complaint shall be denied.

Count V - Loss of Consortium

In Count V of the Complaint, Plaintiff Gloria Pettes, wife of Plaintiff Grover Pettes, seeks damages for loss of consortium.  The New Mexico Tort Claims Act does not waive immunity for loss

---

[3]Plaintiff has cerebral palsy.  (Resp. at 2.)

of consortium claims.[4]  *See* N.M. Stat. Ann. § 41-4-12.  Furthermore, consent to sue may not be implied.  *See Pemberton v. Cordova*, 105 N.M. 476, 478, 734 P.2d 254, 256 (N.M. Ct. App. 1987).  Therefore, Count V of the Complaint, Plaintiff Gloria Pettes' loss of consortium claim against the City of Las Cruces, Lawrence Archuleta and Tom Massad, shall be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that  City Defendants' (City of Las Cruces, Lawrence Archuleta and Tom Massad) Motion to Dismiss Certain Claims by Grover Lee Pettes and All Claims by Gloria Pettes (Docket No.17), filed February 26, 2001, is **granted in part** and **denied in part.**

_____
**UNITED STATES DISTRICT JUDGE**

---

[4]"The immunity granted [by the New Mexico Tort Claims Act] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United Sates or New Mexico when caused by law enforcement officers while acting within the scope of their duties."  N.M. Stat. Ann. § 41-4-12.